IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2, 2020 Session

## BRIAN LEE HIGDON v. AEHUI NMI HIGDON

**Appeal from the Chancery Court for Rutherford County**
**No. 75CH1-2018-CV-471     Darrell Scarlett, Judge**

_____

### No. M2019-02281-COA-R3-CV

_____

This appeal arises from a divorce.  Brian Lee Higdon ("Husband") filed for divorce from Aehui Higdon ("Wife") in the Chancery Court for Rutherford County ("the Trial Court"). The parties executed a marital dissolution agreement ("the MDA").  The Trial Court approved the MDA and entered a Final Decree of Divorce.  Wife later filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02 seeking to have the MDA and Final Decree of Divorce set aside on grounds of mistake of fact, fraud, and fundamental unfairness.  After a hearing at which both Husband and Wife testified, the Trial Court denied Wife's motion.  Wife appeals, arguing among other things that she was coerced into signing the MDA.  Deferring to the Trial Court's implicit credibility determinations, we do not find that Wife was coerced into signing the MDA.  Wife failed to meet her burden of clear and convincing evidence that there was mistake of fact, fraud, or fundamental unfairness in the execution of the MDA.  In sum, we discern no abuse of discretion in the Trial Court's decision to deny Wife's Rule 60.02 motion.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Brock East and Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, Aehui Higdon.

C. Diane Crosier, Franklin, Tennessee, for the appellee, Brian Lee Higdon.

# OPINION

## Background

Husband was serving in the United States Air Force and deployed to South Korea where he met Wife. Husband and Wife married in 1993. The parties have a daughter, Lauren, who is of majority age. During the marriage, Husband and Wife lived apart much of the time. Wife, who taught English to college students in South Korea, spent much of the marriage living in South Korea and not with Husband and their daughter. Wife periodically sent Husband large sums of money—upwards of $70,000 per year—for Husband and Lauren's support. After over twenty years of service, Husband retired from the Air Force and went to work for Nissan. Husband draws $1,800 a month for service-related disability and $3,616 a month in military retirement.

In March 2018, Husband sued Wife for divorce in the Trial Court. Husband was represented by counsel; Wife elected to proceed pro se. Husband's attorney drafted the MDA, which Husband and Wife executed. The MDA's property division made no provision for Wife to receive any of Husband's military pension. In May 2018, affidavits from Husband and Wife, a Final Decree of Divorce, and the MDA all were lodged with the Trial Court. In June 2018, the Trial Court entered the Final Decree of Divorce with the MDA attached.

In April 2019, Wife, then represented by counsel, filed a motion pursuant to Tenn. R. Civ. P. 60.02 seeking to set aside the Final Decree of Divorce and the MDA. Wife asserted, among other things, that she "felt threatened by Husband and Husband was insistent on several issues: a. That [Husband's] attorney was representing both of the parties and the deal was fair and equitable; b. That the marital retirement through Husband's military service was not something that Wife was entitled to nor something that could be divided…." Wife also stated that she did not comprehend the terms of the MDA as English is her second language. Wife stated further that Husband failed to disclose assets and liabilities.

In May 2019, Husband filed a response to Wife's motion. Husband denied that he misled or coerced Wife into signing the MDA. With respect to disclosure, Husband stated: "Admitted that the values were not indicated on the Agreement; however, Plaintiff would state that he provided Defendant with a Statement of Assets and Liabilities indicating the values of the assets." Husband stated further: "Plaintiff denies that he did not disclose the assets because he provided her with a Sworn Statement of Assets and Liabilities. *Exhibit 3* Plaintiff would state that Defendant did not provide a full disclosure to him."

In November 2019, the Trial Court heard Wife's Rule 60.02 motion. The bulk of the testimony received at this hearing came from Husband and Wife. Wife testified that, while she was living in South Korea, Husband mailed her a petition for divorce. Wife asked Husband by telephone what the documents meant. Husband responded that he was divorcing her. Ms. Crosier, Husband's attorney, sent Wife a letter stating in part: "I have been retained to represent Mr. Brian Higdon in the above-styled divorce action." Wife testified to receiving a letter from Ms. Crosier but stated "[m]aybe I didn't read it because … It was too hurt [sic]. I didn't read it."

Wife testified that, in May 2018, she returned to the United States to attend Lauren's graduation from the University of Tennessee Knoxville. She stayed with Husband for the visit. According to Wife, upon her return, Husband threatened her into signing the MDA. Wife testified that she was not presented with an asset and liability disclosure at the time. Wife also testified that Husband told her she was not entitled to any of his military pension. In addition, Wife stated that Husband led her to believe Ms. Crosier represented both of them. Wife was asked about the circumstances leading up to her signing the MDA, as well as what eventually prompted her to call Ms. Crosier:

Q. Where -- where were you?
A. We were at home. It was just me and him. And he took me to a -- maybe, post office, something like that. And he pointed some spot, sign; and he flipped over, sign; flip over, sign.
Q. What was your understanding of -- well, strike that. Did you feel like you had a choice?
A. No. He threatened me. I know he had so many guns in the gun safe, and he has handgun. I cannot open the gun safe. He has it. And he has hand gestured having gun on his head and chest (indicating). I don't love you….

***

Q. I'm going to bring you back to that day. Now, Ms. Higdon, were you presented with an affidavit or an asset disclosure as has now --
A. No.
Q. -- been presented to you?
A. It's -- when I asked him -- because I knew he was investing with Janus. I asked him how much we had in Janus. He said, Zero, nothing. And I didn't see affidavit.
Q. Okay.
A. Diane, the lawyer, didn't send me affidavit, and he didn't show me.
Q. Okay. Number two, what was your understanding of the military retirement?

A. I knew I get 50 percent, but he said, No.  I said, Yes.  And he said, Because you didn't live with me in the last few years, you cannot get it.

Q. What was your understanding of Ms. Crosier's role in this divorce?

A. Because he told me, She is our lawyer and that she is United States lawyer; she doesn't lie.  I said, you know, I suppose to get 50 percent of retirement.  And he said, It's all legally made because the lawyer is our lawyer, and she doesn't lie.

***

Q. All right.  When did you learn that you may have had an interest in the retirement of your husband -- or under your husband's name?  When did you learn that?

A. I just automatically knew what -- I mean.

Q. Okay.  Let me say this.  What prompted you -- did you call Ms. Crosier?

A. I called her.

Q. Okay.  Why did you call her?

A. Well, because I got the wrong information, because, you know, all my military friends all say, you know, Did you get the 50 percent?  I said, No, because -- and him and his lawyer said I'm not supposed to because I didn't live with him few years end of his Air Force.  So they said I'm not -- I cannot get it.  But my friends said it is not true.  You -- you supposed to get it.  I asked Mr. Higdon many times, text messages, and saying, you know, I deserved it.  You know, he need to give me that.  He keeps saying no.

Q. All right.  Is this after you had signed?

A. After I signed.  I asked many times.  He said no.

On cross-examination, Wife was asked if she read the divorce documents before signing them.  Wife stated "[T]hey were too much.  I couldn't read it all.  And he didn't give me time to read it all.  I was scared."  Wife stated that she thought Husband might kill her.  Wife testified:

Q. Ms. Higdon, do you just routinely sign off on documents that you don't know what's in them?

A. Do you read everything when you sign something?

Q. Ms. Higdon --

A. It will take days and days to read everything.

Q. Did you read the marital dissolution agreement at all?

A. After I signed, yes.

Q. Why would you --

A. He didn't give me a chance to sign it. He flipped over and point to the line, and I signed it.

Q. And you initialed each page, correct?

A. Yeah. He flipped over; he point. And I signed where he point.

Husband took the stand. Husband stated that he and Lauren largely had been without Wife since late 2005. Husband acknowledged Wife's significant financial contributions to the marriage. Husband denied ever suggesting to Wife that Ms. Crosier represented both of them.

According to Husband's testimony, on a Sunday evening or Monday morning during Wife's visit for Lauren's graduation, Husband put the MDA and sworn asset and liabilities sheet on the kitchen table where Wife could access them. On Thursday, Husband and Wife executed the MDA. Asked if he threatened Wife, Husband stated he had not. Husband testified:

Q. Mr. Higdon, did you ever threaten her to sign these papers?

A. I never threatened her.

Q. Did you hold your finger to your head or your chest?

A. I've never made any gestures like that.

Q. Would you do that?

A. Never.

***

Q. Would -- did you tell her what would happen if she didn't want to sign the papers?

A. Yes. I told her -- I said, If you don't sign papers, then this will go in front of a judge, and he'll make a determination on the divorce and it will just cost more money, take more time, but the divorce would still happen.

Q. Did she ever talk about going to hire her own lawyer?

A. No.

Q. Did you ever tell her that your military pension -- that she could -- she couldn't get half of it -- or, well, a marital portion of it? Did you ever tell her she couldn't have any of it?

A. No. I was just, like, "I just don't feel like you're entitled to my retirement, when you haven't been living with me."

On cross-examination, Husband was asked why he never signed or notarized the asset and liability sheet. Husband stated:

-5-

Q. All right. But it's your position that you were sitting on the MDA and you were sitting on an asset liability sheet, yes?
A. Yes, I had.
Q. And that she said, Okay. I'll just sign it. And you put it on a table, and it stayed there. You don't know if she ever reviewed it or not, true?
A. I presented her with the documents and don't know what happened after that.
Q. And you're saying, on the kitchen table was both the MDA and this asset and liability sheet?
A. They were together.
Q. Now, when you went to UPS and you -- you had her sign this MDA. And you signed this MDA, did you also take with you this asset and liability sheet?
A. I think so.
Q. All right. Why did you not sign it there?
A. Because I believe I only was required to sign the MD -- or the marital dissolution agreement.

***

Q. All right. And, you agree, you never signed the asset sheet at all, did you?
A. It was not notarized and signed by me.
Q. Why did you not go through that step?
A. Just -- I don't know.
Q. Well, you've heard my client say that step never happened? You heard her said that, yes?
A. Yes, sir. Yes, I've heard that.
Q. She's saying she didn't receive it till after we filed this motion to set this aside, true?
A. Well, she's also said she hasn't received a lot of documents that we've proven she did.

In December 2019, the Trial Court entered its final judgment. The Trial Court denied Wife's Rule 60.02 motion. In its order, the Trial Court found in relevant part:

> Ms. Higdon's request for relief from the marital dissolution agreement based upon mistake of fact is not well-taken. Ms. Higdon testified that she was not aware that she would be entitled to a portion of the military retirement benefits of Mr. Higdon. The Court finds that Ms. Higdon's allegation amounts to a mistake of law, not a mistake of fact. The Court relies upon *Hadley vs. Hadley*, 2001 WL 920220, which sets forth that a party

cannot obtain relief under Rule 60.02 for a mistake of law. The Court further relied upon the ruling in *Selitsch vs. Selitsch*, 492 S.W.3rd 677 (Tn. Ct. App. 2015) in denying relief upon mistake by Ms. Higdon.

Ms. Higdon further sought relief as to her mistake in fact that Counsel for Mr. Higdon was also her attorney. The Court finds that the perception was error on Ms. Higdon's part and not any error created by or on behalf of Mr. Higdon or Ms. Crosier. Further, it is a matter of law on who Ms. Crosier represents and the documents reflect such. The Court finds that a fair reading of the documents reflect that Ms. Crosier represented Mr. Higdon and that it was not reasonable for Ms. Higdon to conclude or believe that Ms. Crosier represented her given the nature of all of the communications and pleadings.

Ms. Higdon's request for relief from the marital dissolution based upon the allegation of fraud is not well-taken. The Court finds no evidence of fraud. The Court relies upon the ruling in *Wagoner-Angelin v. Angelin*, 2017 WL 3769373, wherein the facts were similar to the case at issue. The Court finds that Ms. Higdon knew about the existence of the military retirement and that she knew the retirement was a marital asset. The Court states that the non-disability portion of the retirement is marital, not the disability portion of the retirement.

Ms. Higdon further alleged in her Rule 60.02 Motion that she is entitled to relief because the division was not fair or equal. The Court relied upon *Pierre vs. Pierre*, 2014 WL 5492759, in which the Court of Appeals acknowledged that relief could not be granted on a Rule 60.02 motion challenging the equitable division of property and debts set forth in a marital dissolution agreement. The Court cannot look to the fairness of the marital dissolution agreement.

Wife timely appealed to this Court.

### Discussion

Although not stated exactly as such, Wife raises the following issues on appeal: 1) whether the Trial Court erred in denying Wife's Rule 60.02 motion on the basis of fraud or misrepresentation or other misconduct of an adverse party; 2) whether the Trial Court erred in denying Wife's Rule 60.02 motion on the basis she is entitled to relief because the MDA is unconscionable and so one-sided as to be fundamentally unfair and inequitable; and, 3) whether the Trial Court erred in denying Wife's Rule 60.02 motion on the basis of mistake, inadvertence, surprise or excusable neglect.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the

evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Regarding witness credibility, our Supreme Court has stated:

> When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn. 2013), (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)), *cert. denied*, ––– U.S. ––––, 134 S.Ct. 224, 187 L.Ed.2d 167 (2013).

*Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

This is an appeal of the Trial Court's denial of Wife's Rule 60.02 motion. Tenn. R. Civ. P. 60.02 provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken….

Tenn. R. Civ. P. 60.02.

In *Selitsch v. Selitsch*, this Court discussed our standard of review on Rule 60.02 motions for relief as follows:

> We review motions for relief based on Rule 60.02 grounds under an abuse of discretion standard. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). "Abuse of discretion is found 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *Morgan*, 363 S.W.3d at 487 (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). Thus, the appellate court should "review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

> \*\*\*

> Relief under Rule 60.02 is considered an exceptional remedy that is designed to strike a proper balance between the competing principles of finality and justice. *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 127 (Tenn. 2013). The burden is on the party seeking this extraordinary relief to establish facts explaining why such relief is justified. *Wine v. Wine*, 245 S.W.3d 389, 397 (Tenn. Ct. App. 2007).

>> A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence." *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330,

341 (Tenn. 2005)). In general, "the bar for attaining relief is set very high and the burden borne by the movant is heavy." *Johnson v. Johnson*, 37 S.W.3d 892, 895 n. 2 (Tenn. 2001).

*Furlough*, 397 S.W.3d at 128.

*Selitsch v. Selitsch*, 492 S.W.3d 677, 681-83 (Tenn. Ct. App. 2015).

In *Day v. Day*, this Court elaborated upon the nature of and high threshold for relief under Rule 60.02:

Rule 60.02 is not "a mechanism for use by a party who is merely dissatisfied with the result of a particular case." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991).

The rule "acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). "Because of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened." *Toney*, 810 S.W.2d at 146.

A mistake of law is not a basis for Rule 60.02 relief. *Spruce v. Spruce*, 2 S.W.3d 192, 195 (Tenn. Ct. App. 1998). As the Supreme Court has noted, "[i]f this Court were to hold that ignorance of the law is a proper ground for relief under [Tenn. R. Civ. P. 60.02], it is hard to conceive how any judgment could be safe from assault on that ground." *Food Lion, Inc. v. Washington County Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985).

A party proceeding under Rule 60.02(1)-"mistake, inadvertence, surprise or excusable neglect"-must demonstrate facts explaining why he or she was justified in failing to avoid mistake, inadvertence, surprise or neglect. *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 69 (Tenn. 1985).

*Day v. Day*, No. M2001-01624-COA-R9-CV, 2002 WL 13036, at *3-4 (Tenn. Ct. App. Jan. 4, 2002), *no appl. perm. appeal filed*.

Having reviewed the applicable law, we now address Wife's first issue of whether the Trial Court erred in denying her Rule 60.02 motion on the basis of fraud or misrepresentation or other misconduct of an adverse party. Wife asserts that Husband failed to disclose assets and liabilities, as well as the value of his military pension. Wife

points also to Husband's statement to her that she was not entitled to any of his pension as evidence she was deceived. Wife states that she was hampered in this case as English is her second language. Finally, Wife asserts that Husband threatened her.

Husband concedes, and his testimony reflects, that he told Wife he did not feel she was entitled to any amount of his pension because she had not been living with him. This Court has stated, however, that an "interest in a retirement benefit, vested or unvested, that accrues during a marriage, is marital property subject to division. Military pension rights are not excluded from such division." *Matthews v. Matthews*, No. M2009-00413-COA-R3-CV, 2010 WL 1712961, at *6 (Tenn. Ct. App. Apr. 28, 2010) (citations omitted), *no appl. perm. appeal filed*. Husband's 'feelings' aside, his statement to Wife was legally inaccurate. To the extent Wife believed Husband's misstatement of the law, she was under a false apprehension. That said, Tennessee law is abundantly clear that a mistake of law as opposed to fact will not justify relief under Rule 60.02. Furthermore, judging from Wife's testimony, it is not at all clear that there actually was any mistake. At trial, Wife testified: "I knew I get 50 percent." In fact, Wife testified she knew "just automatically" that she had an interest in Husband's retirement. Husband rebuffed her, but Wife knew about the pension, and even knew it was marital property subject to division. Regarding value, Husband points to an affidavit he filed reflecting that he provided Wife with the unnotarized statement of assets and liabilities which contained the monthly benefit amount of his retirement. Responsibility for Wife's failure to pursue or explore further her claim to a share of Husband's pension rests with Wife. Additionally, Wife's contention that she did not understand the consequences of the MDA because English is her second language is unpersuasive since the record establishes that Wife is fluent in the English language and has taught it to college students in South Korea.

Several of Wife's contentions depend on crediting her testimony, much of which was contradicted by Husband's testimony. Wife testified that Husband never fully disclosed assets or liabilities; Husband testified that he made this information available to Wife. Wife testified that Husband threatened her; Husband testified that he did not. Thus, the evidence in the record on appeal with regard to these questions of disclosure and threats rests upon a he said/she said dichotomy which, in turn, hinges upon an assessment of witness credibility. The Trial Court's order reflects an implicit credibility finding in favor of Husband. We extend a high degree of deference to trial courts' credibility determinations, and we will not overturn such determinations absent clear and convincing evidence to the contrary. No such clear and convincing evidence is forthcoming. Clear and convincing also is the evidentiary burden Wife must meet to obtain relief on this issue under Rule 60.02. We find that she failed to meet that burden. This being so, we discern no abuse of discretion in the Trial Court's denial of Wife's request for relief pursuant to Tenn. R. Civ. P. 60.02 for fraud or misrepresentation or other misconduct of an adverse party.

We next address whether the Trial Court erred in denying Wife's Rule 60.02 motion on the basis she is entitled to relief because the MDA is unconscionable and so one-sided as to be fundamentally unfair and inequitable. Wife states that the MDA, as a contract, is subject to contractual defenses not necessarily listed in Rule 60.02.[1] Specifically, Wife asserts that the MDA is unconscionable for being grossly inequitable. Wife argues: "Wife received approximately $152,000.00 worth of assets, and Husband received approximately $352,000.00 worth of assets. This difference alone, of more than twice what Wife received, is by itself one-sided and inequitable."

This Court has discussed contractual unconscionability as follows:

> A contract will be found to be unconscionable only when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) (quoting *Haun[v. King]*, 690 S.W.2d [869, 872 (Tenn. Ct. App. 1984)]). The unconscionability analysis can be broken down into two component parts: (1) procedural unconscionability, which is an absence of the meaningful choice on the part of one of the parties and (2) substantive unconscionability, which refers to contract terms which are unreasonably favorable to the other party. *Elliott v. Elliott*, No. 87-276-II, 1988 WL 34094, at \*4 (Tenn. Ct. App. April 13, 1988).

*Philpot v. Tennessee Health Management, Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007).

While Wife is correct that unconscionability is a defense to a contract, it is important to note that we are reviewing the Trial Court's denial of Wife's Rule 60.02 motion. This is not a direct appeal from the Trial Court's entry of the Final Decree of Divorce and its approval of the MDA. Therefore, we will not engage in the analysis of equitableness we employ when reviewing the division of a marital estate in a divorce. Rather, we are reviewing whether the Trial Court erred in denying Wife the exceptional remedy provided by Rule 60.02. The Trial Court was presented with two parties, Husband and Wife, who signed the MDA, ostensibly (and as we find herein) freely. The Trial Court gave effect to their agreement. Had there been a trial in the underlying divorce, ultimately the Trial Court would have had to make the final determination, based on the evidence before it, as to an equitable division of marital assets and debts. If this had occurred, the result might well

---

[1] "To the extent that obligations in a marital dissolution agreement retain their contractual character, they should be construed and enforced like other contracts." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498-99 (Tenn. 2006); *Bogan*, 60 S.W.3d at 730).

have been different from the result obtained in the MDA. That is not what happened, however. The parties agreed to a settlement, and it was duly entered. We decline Wife's request to re-open via a Rule 60.02 motion the division of the marital estate on the basis of alleged inequitableness.

It is not even necessarily obvious to this Court that the division was inequitable, or if it was, toward whom. At trial, Husband testified that Wife's balance sheet was inaccurate. He cited her failure to list indebtedness on assets, listing values of items with no factual basis, and listing his separate inherited property as a marital asset. This, again, would have been an appropriate line of inquiry in a divorce trial; it is not appropriate on a Rule 60.02 motion. Even if the MDA is a bad deal for Wife as it may well be, that alone does not justify relief under Rule 60.02. There is nothing about the MDA so shocking on its face as to justify relieving Wife from its terms. Wife has failed to prove by the requisite clear and convincing evidence that she is entitled to relief. We discern no abuse of discretion in the Trial Court's denial of Wife's request for relief pursuant to Tenn. R. Civ. P. 60.02 for fundamental unfairness.

The third and final issue we address is whether the Trial Court erred in denying Wife's Rule 60.02 motion on the basis of mistake, inadvertence, surprise or excusable neglect. In this issue, Wife reiterates her contention that she was deceived as to Husband's retirement and her potential share of it, an argument we already have addressed. Beyond that, Wife argues that she was misled by Husband into believing Ms. Crosier represented both of them. Witness credibility again comes into play. Husband denied ever representing to Wife that Ms. Crosier also was Wife's attorney, and we leave undisturbed the Trial Court's implicit credibility determination in his favor. In addition, the pleadings and correspondence, including correspondence from Ms. Crosier to Wife, reflect that Ms. Crosier represented only Husband in this matter. As did the Trial Court, we find that Wife had no reasonable basis for concluding that Ms. Crosier represented her.[2]

Wife has testified that, on multiple occasions in this case, she simply did not timely or carefully read the documents that were presented to her. Respectfully, that was Wife's responsibility, and her failure to act with diligence in response to Husband's suit for divorce is not a basis for relief under Rule 60.02. We find that, on this third basis for relief argued by Wife, she again has failed to meet the burden of clear and convincing evidence. We discern no abuse of discretion in the Trial Court's denial of Wife's request for relief pursuant to Tenn. R. Civ. P. 60.02 for mistake, inadvertence, surprise or excusable neglect. We affirm the judgment of the Trial Court in its entirety.

---

[2] Wife states in a footnote in her brief that she in no way means to suggest Ms. Crosier made any misrepresentations to either party. Rather, Wife argues Husband misled her into believing that Ms. Crosier represented both parties.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Aehui Higdon, and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE